UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

IN RE HURRICANE SANDY CASES

------------------------------------------------X

THIS DOCUMENT APPLIES TO:

ALL RELATED CASES
------------------------------------------------X

**DEFENDANTS' LIST OF COMMONLY OCCURRING LEGAL ISSUES**

14 MC 41

Pursuant to In Re Hurricane Sandy Cases - Case Management Order No. 1, Defendants' Liaison Counsel Jared T. Greisman hereby submits the following list of commonly occurring legal issues and defenses that defendants anticipate, from experience, may arise in a number of the Sandy cases, along with relevant case law or other authority addressing these issues. Having solicited all CM/ECF registered defense counsel on the Sandy case for input, and received numerous responses and engaged in telephone conversations with other defense counsel, I believe the following is a fair representation of commonly occurring legal issues that defendants' counsel anticipate may arise in many of these cases.

I received input from attorneys representing insurers who issued all risk policies and non NFIP flood insurance policies.  In addition, I received input from attorneys representing agents and brokers.

**COMMONLY OCCURRING ISSUES IN PROPERTY INSURANCE**

**A. Fortuity**

In order to recover under an all-risk policy, the insured must show a "fortuitous" loss of the covered property.  See *Simplexdiam, Inc. v. Brockbank*, 283 A.D.2d 34, 37-38, 727 N.Y.S.2d 64, 67 (1st Dept. 2001).  An all risk policy protects against a fortuitous event and does not

obligate the insurer to pay for loss or damage resulting wholly from the nature and inherent qualities of the property insured. See *80 Broad Street Co. v. U.S. Fire Insurance Co.*, 88 Misc.2d 706, 707, 389 N.Y.S.2d 214, 215 (Sup. Ct. N.Y. Co. 1975). The insured bears the initial burden of demonstrating that it has suffered a fortuitous physical loss of or damage to a covered property and, if the insured sustains this burden, the burden then shifts to the insurer to demonstrate that the claimed losses are otherwise excluded from coverage. *Montefiore Medical Center v. American Protection Ins. Co.*, 226 F. Supp. 2d 470 (S.D.N.Y. 2002).

### B. Insurable Interest

An insured must have an "insurable interest" in property covered by a first-party property insurance policy. N.Y. Ins. Law §3401. An "insurable interest" is defined as "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage" and is to be construed broadly. N.Y. Ins. Law §3401. Lack of "insurable interest" renders a property policy void. *See Etterle v. Excelsior Ins. Co.* 74 A.D.2d 436, 428 N.Y.S.2d 95 (4th Dept. 1980).

### C. Rules of Construction For Interpreting Insurance Policies

"The proper interpretation of an unambiguous contract is a question of law for the court." *RSL Commc'ns, PLC v. Bildirici*, 2010 U.S. Dist. LEXIS 22368, at *4, 2010 WL 846551, at *1 (S.D.N.Y. Mar. 5, 2010); *see also Peabody v. Weider Publ'ns, Inc.*, 260 F. Appx. 380, 382 (2d Cir. 2008) ("The meaning of unambiguous contract terms is a question of law for a court, not a jury, to decide"). Similarly, "[w]hether . . . a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 556 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (1990); *accord Senaca Ins. Co. v. Ill. Nat'l Ins. Co.*, 2009 U.S. Dist. LEXIS 58765, at *8, 2009 WL 2001565, at *3 (S.D.N.Y. July 9, 2009). A

contract that is "on its face . . . reasonably susceptible to only one meaning" is unambiguous. *White v. Cont'l Cas. Co.*, 9 N.Y.2d 264, 267, 878 N.E.2d 1019, 1021, 848 N.Y.S.2d 603, 605 (2007) (citation omitted).

"It is unquestionably the rule that '[c]ontracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.'" *In re Estate of Covert*, 97 N.Y.2d 68, 76, 761 N.E.2d 571, 576, 735 N.Y.S.2d 879, 884 (2001) (citation omitted). Accordingly, "when interpreting a contract, the 'intention of the parties should control . . . [, and] the best evidence of intent is the contract itself; if an agreement is complete, clear and unambiguous on its face, it must enforced according to the plain meaning of its terms.'" *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007) (citation omitted); *see also Slatery Skanska Inc. v. Amer. Home Assur. Co.*, 67 A.D.3d 1, 13, 885 N.Y.S.2d 264, 273 (1st Dept. 2009) ("[C]ontracts of insurance are 'to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed'") (citation omitted).

Insurance policy language that is clear and unambiguous should not be given a "strain[ed]," "unnatural," or "unreasonable" construction, *see Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 80 N.Y.2d 986, 987, 607 N.E.2d 792, 793, 592 N.Y.2d 645, 646 (1992), and the "plain meaning" should not be disregarded "to find an ambiguity where none exists." *Bassuk Bros. v. Utica First Ins. Co.*, 1 A.D.3d 470, 471, 768 N.Y.S 2d 479, 481 (2d Dept. 2003). Thus, the mere assertion by a party that the policy language means something to them, when it is otherwise clear, is not enough to render the policy ambiguous. *See Broad St., LLC v. Gulf Ins. Co.*, 37 A.D.3d 126, 131, 832 N.Y.S.2d 1, 4 (1st Dept. 2006) ("[A] court [should not] disregard

the provisions of an insurance contract which are clear and unequivocal . . . or accord a policy a strained construction merely because that interpretation is possible") (citation omitted); *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (plaintiff "cannot create . . . ambiguity in . . . otherwise plain agreement merely by 'urg[ing] different interpretations in . . . litigation'") ( citation omitted).

### D. An Insured Person Is Presumed to Understand the Terms of Their Policy

It has long been the law of New York that one who accepts an insurance policy is conclusively presumed to know its contents and to assent to them. *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 125 N.E. 814 (1920). *See also Porwick v. Fortis Benefits Ins. Co.,* 2004 U.S. Dist. LEXIS 24432, 2004 WL 2793186 (S.D.N.Y. December 3, 2004). This is the rule whether or not the insured reads the policy. *Metzger,* 227 N.Y. at 416 ("[W]hen a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not.").

Moreover where, as here, a party has accepted an insurance policy, it has no action against his insurance broker for having procured such coverage, even though the coverage is allegedly not in accord with what that party could have obtained. *See Busker on the Roof Ltd. P'ship v. Warrington,* 283 A.D.2d 376, 377; 725 NY.S.2d 45 (1st Dept. 2001). In *Busker on the Roof,* the First Department reiterated the Court of Appeals holding *Chase Sci. Research v. NIA Group*, 96 N.Y.2d 20, 749 N.E.2d 161, 725 N.Y.S.2d 592 (2001) that defendant insurance brokers are not professionals and therefore claims against them do not sound in malpractice. *Id.* at 376. In addition, the lower court's dismissal of the plaintiff's claims for breach of contract and negligence were upheld against the insurance broker where the insured received the policy months before the accident at issue and is conclusively presumed to have known, understood and

assented to its terms, and, accordingly has no action against its insurance broker for having procured such coverage, even though the coverage was not entirely in accord with what plaintiff had requested. *Id.* at 377 (*citing Metzger v. Aetna Ins. Co.,* 227 N.Y. 411).

New York courts have consistently held that an insured that has received its insurance policy is deemed to have known and assented to the terms contained therein, and may not complain for the first time, after a loss, that the coverage contained therein is insufficient. *Maple House, Inc. v. Alfred F. Cypes & Co., Inc.,* 80 A.D.3d 672, 672, 914 N.Y.S.2d 912, (2d Dept. 2011); *Motor Parkway Enterprises, Inc. v. Loyd Keith Friedlander Partners, Ltd.,* 89 A.D.3d 1069, 1070, 933 N.Y.S.2d 586 (2d Dep't 2011); *Portnoy v. Allstate Indem. Co.,* 82 A.D.3d 1196, 1198 (2d Dept. 2011); *Stilianudakis v. Tower Ins. Co. of New York,* 68 A.D.3d 973, 974, 889 N.Y.S.2d 854 (2d Dept. 2009); *Catskill Mountain Mech., LLC v. Marshall & Sterling Upstate, Inc.,* 51 A.D.3d 1182, 1184-85, 857 N.Y.S.2d 353 (3d Dept. 2008); *Gui's Lumber & Home Ctr., Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.,* 55 A.D.3d 1389, 1390, 864 N.Y.S.2d 818 (4th Dept. 2008); *Stone v. Rullo Agency, Inc.,* 40 A.D.3d 1185, 1186, 834 N.Y.S.2d 588 (3d Dept. 2007); *McGarr v. Guardian Life Ins. Co. of Am.,* 19 A.D.3d 254, 256, 799 N.Y.S.2d 19 (1st Dept. 2005); *Loevner v. Sullivan & Strauss Agency, Inc.,* 35 A.D.3d 392, 394, 825 N.Y.S.2d 145 (2d Dept 2006); *Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.,* 19 A.D.3d 1056, 1057-58, 796 N.Y.S.2d 790 (4th Dept. 2005) *affd. on other grounds* 7 N.Y.3d 152, 851 N.E.2d 1149, 818 N.Y.S.2d 798 (2006); *Laconte v. Bashwinger Ins. Agency,* 305 A.D.2d 845, 846, 758 N.Y.S.2d 562 (3d Dept. 2003).

This principle has been applied even where there was a specific request for coverage. For example, in *Laconte v. Bashwinger, supra,* plaintiffs had specifically asked that their broker schedule certain jewelry onto their homeowner's insurance policy. Plaintiffs admitted receiving a

copy of their homeowner's policy. The policy contained a schedule of personal property, which did not include the additional jewelry. When the jewelry was discovered to be missing, plaintiffs filed a claim under the homeowner's policy and were informed that the jewelry was not covered. Plaintiffs, therefore, commenced an action against their insurance broker, alleging that the broker should be liable for a failure to procure the requested coverage. The Appellate Division dismissed the claims asserted against the broker.

### E. An Insured Has Constructive Knowledge of the Terms of The Policy

It has long been the rule in New York as discussed above that an insured, upon receipt of its insurance policy, is bound by the terms, conditions and limits of coverage reflected in the policy. *Hoffend & Sons. Inc. v. Rose & Kiernan, Inc.,* 19 A.D. 3d 1056, 1057, 796 N.Y.S.2d 790 (4th Dept. 2005); *M&EMfg. Co. v. Frank H. Reis, Inc.,* 258 A.D.2d 9, 12, 692 N.Y.S.2d 191 (1999); *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 125 N.E.814 (1920).

### F. Exclusions

a. <u>Applicable Burden of Proof between Insured and lnsurer:</u>

Given that many claims may consist of damage caused by wind, a covered peril, and flood, an excluded peril, the applicable burdens of proof for the insured and insurer will be disputed. New York courts have recognized that in a claim under a property policy, the insured bears the burden of establishing that the damage for which coverage is sought is a covered loss under his insurance policy and the burden is on the insurer to prove an applicable exclusion barring coverage. *Czech v. Kelly*, 36 Misc. 3d 152(A), 2012 N.Y. Misc. LEXIS 4247, 2012 WL 3887211 (App. Term 2d Dept. 2012) (involving dispute over coverage under homeowners policy for damage to roof from snow storm); *Fernandes v. Allstate Ins. Co.*, 305 A.D.2d 1065, 758 N.Y.S.2d 729 (4th Dept. 2003) (involving claim for collapse of roof and noting that plaintiff was

required to establish damage was caused by a covered loss); *U.S Dredging Corp. v. Lexington Ins. Co.*, 99 A.D.3d 695, 952 N.Y.S.2d 60 (2d Dept. 2012) (finding that despite "all-risk" coverage, insured seeking to recovery for loss under insurance policy as burden of proving loss occurred and also that the loss was a covered event within the terms of the policy). Under these authorities, the insureds would bear the burden of proving a loss due to a covered event, i.e., windstorm, and the insurers would bear the burden of proof to prove the applicability of any exclusion, i.e., flood, for that loss.

The insured bears the burden of proof of establishing not only that a covered loss occurred, but also the value of that loss. See *CTI International, Inc. v. Lloyds Underwriters*, 735 F.2d 679 (2nd Cir. 1984). Insurance contracts against loss are contracts of indemnity, which are meant to place insureds in the same position they were in before the damage was sustained. *Berkshire Mut. Ins. Co. v. Moffett,* 378 F.2d 1007, 1011 (5th Cir. 1967). An insured should not financially gain as the result of his insurance recovery. *Ragas v. State Farm First Casualty*, 2008 U.S. Dist. LEXIS 10285, 2008 WL 425536, at *6 (E.D. La. Feb. 11, 2008); Couch on Insurance § 175:5 (3d ed. 1998). The indemnity character of insurance limiting recovery to actual loss is imposed as a matter of public policy. Couch on Insurance § 1:37 (3d ed. 2010).

In view of these principles, an insured is generally limited to recovery in the amount of the actual loss sustained, even if he or she might have recovered additional policy benefits under some alternative scenario. Repair records are the best evidence of repair costs and, thus, of the actual loss sustained. *See e.g., Volkswagen of America, Inc. v. Robertson*, 713 F.2d. 1151, 1169 (5th Cir.1983) ("Where invoices, statements, or records of accounts expended in the repair of damages are in the possession of plaintiff or are available or attainable, such records constitute

the best evidence and should be offered in proof of plaintiff's claim.  In the event such evidence is not available or attainable, proof of loss should be made by offering the testimony of the person furnishing the material, labor, or supplies when such testimony may be produced. Upon proper showing that the testimony of such persons is not available, the court may allow a claim for damages, upon the production of such available testimony as fairly and reasonably establishes plaintiff's claim under the circumstances."). Further, after an insured has made repairs, repair estimates are irrelevant. *See e.g., LaCroix v. State Farm Fire and Casualty Company*, 2010 U.S. Dist. LEXIS 60675, 2010 WL 2265577, at *4 (E.D. La., June 2, 2010) (because "the actual governs over the theoretical," damages may be predicated on the basis of estimates only when the loss has not been repaired).

Where a covered and a non-covered peril contribute to a claimant's loss, "[i]t is an insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril." 12 Couch on Insurance § 175:9 (3d Ed. 2006), cited with approval in *Broussard v. State Farm*, 2007 U.S. Dist. LEXIS 56767, 2007 WL 2264535 at 2-3 (E.D. La. Aug. 2, 2007). Accordingly, "insureds whose losses are only partially reimbursable by the insurer" have the burden of "segregating damages to the insured building from a covered peril from those caused by a noncovered peril." 17A Couch on Insurance § 254:75.

    b.  Anti-Concurrent Causation Policy Provisions:

Water/Flood Related exclusions and anti-concurrent cause clauses are enforceable under NY law. See *Cashew Holdings LLC v. Canopius U. S. Insurance, Inc.,* 2013 U.S. Dist. LEXIS 125471, 2013 WL 4735645 (E.D.N.Y. September 3, 2013), *ABU Asser Corp. v. Twin City Fire Ins. Co.*, 1997 U.S. Dist. LEXIS 18265, at *4-5, 1997 WL 724568 (S.D.N.Y. Nov. 18, 1997),

*Papadopoulos v. Cambridge Mut. Fire Ins. Co.*, 104 A.D.3d 659, 960 N.Y.S.2d 474 (2d Dept. 2013); *Kannatt v. Valley Forge Ins. Co.*, 228 A.D.2d 564, 644 N.Y.S.2d 530 (2d Dept. 1996). Many homeowners policies contain anti-concurrent causation provisions, which would bar coverage for an excluded loss even if a covered loss also contributed to the damage. For instance, some homeowners policies contain an anti-concurrent cause provision, which bars coverage for loss caused directly or indirectly by water damage, "regardless of any other cause or event contributing concurrently or in any sequence to the loss."[1] Accordingly, under the provision, the policy would exclude coverage for loss caused directly or indirectly by flooding, even if wind contributed to the loss. New York courts have enforced similar anti-concurrent cause provisions to bar coverage for water damage regardless of whether a potentially covered loss may have contributed to the loss. *Jahier v. Liberty Mut Group*, 64 A.D.3d 683, 883 N.Y.S.2d 283 (2d Dept. 2009) (reversing denial of summary judgment to insurer that denied coverage for damage sustained to pool area caused by excluded water damage under homeowners policy containing anti-concurrent cause provision, holding that evidence demonstrated that the insured's loss was attributable to the subsurface water pressure that was exerted upon the empty swimming pool, even though it was precipitated by the drainage of the pool and heavy rainfall).

c. Weather Conditions Exclusions:

Some insurers' policies include a weather conditions exclusion, which would also apply to bar coverage for loss caused by water damage, even if weather conditions, such as wind, contributed to the loss. Some insurers' policies provide that it does not insure for loss to

---

[1] For example, the Policy may provide as follows:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . c. Water Damage, meaning: (I) flood...."

property described in Coverages A and B caused by weather conditions "if weather conditions contribute in any way with a cause of event excluded in paragraph I above to produce a loss." Water damage, including flood, is an excluded cause under paragraph I of the Policy. Although no New York court appears to have interpreted a similar weather conditions exclusion, at least one federal court applying Pennsylvania law has interpreted the same weather conditions exclusion and found that if wind contributed in any way with a plainly excluded cause (deterioration in this case) to produce a loss, then such loss is excluded from policy coverage. See *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F.Supp.2d 656 (W.D. Pa. 2012).

    d.   Wear and Tear & Faulty Workmanship Exclusions:

Many policies also contain exclusions for loss caused by (1) wear and tear, marring, deterioration and (2) inherent vice, latent defect, mechanical breakdown. In addition, some insurers policies contain an exclusion barring coverage for loss caused by faulty, inadequate, or defective design, specifications, workmanship, repair, construction of part or all of any property, whether on or off the residence premises. Courts applying New York law have not hesitated to enforce these exclusions where the evidence supports the loss being caused by one of these excluded perils. See *Rapid Park Indus. BEW v. Great Northern Ins. Co.*, 502 Fed. Appx. 40 (2d Cir. 2012) (finding the wear and tear exclusion to be clear and unambiguous); *Wider v. Heritage Maint., Inc.*, 14 Misc. 3d 963, 827 N.Y.S.2d 837 (Sup. Ct. N.Y. Co. 2007) (finding faulty workmanship exclusion was unambiguous and applied to bar coverage for water damage caused by contractor's failure to follow industry standard and own process in cleaning building facade).

**G. Damages and Valuation**

RCV or ACV

Where an insured seeks to recover under a policy on a replacement cost value basis (RCV), rather than a depreciated actual cash value (ACV) basis, the "actual repair of the property is a condition precedent to recovering on a replacement cost basis." *Executive Plaza, LLC v. Peerless Ins. Co.,* 717 F.3d 114, 117 (2d Cir. 2013).

Off-Set/Credit Under Homeowners Policy For Amount Paid Under Flood

For those claims where insureds have already recovered for damage to their property caused by flood under a flood insurance policy, that insured's homeowner's insurer should be entitled to a credit or off-set for the flood payments to the extent the insured seeks to recover the same damages under the homeowners policy. See *Bradley v. Allstate Ins. Co*., 620 F.3d 509 (5th Cir. 2010) (recognizing the rule against double recovery and finding that in order to determine an10unt potentially recoverable by insured under homeowners policy for uncompensated losses, insurance payments already received from flood insurer should be deducted from total actual loss). New York courts have also recognized the rule that prohibits double recovery for the same damages under two different insurance policies. See *Rosenblatt v. Washington County Coop. Ins. Co.*, 191 A.D.2d 883, 594 N.Y.S.2d 456 (3d Dept. 1993) (finding that payment by one insurer on same loss would constitute a set-off to plaintiffs subsequent claim against second insurer for same loss); see also *J&R Electronics, Inc. v. One Beacon Ins. Co.*, 35 A.D.3d 169, 825 N.Y.S.2d 462 (1st Dept. 2006) (holding insurer entitled to deduct payment it previously made to insured for damaged merchandise so as to avoid double recovery).

**H. Policy Conditions**

Duty to Cooperate

An insurer may establish the insured's lack of cooperation and decline coverage on that basis if it shows that: "(1) it acted diligently in seeking to bring about the insured's cooperation,

(2) the efforts employed by the carrier were reasonably calculated to obtain the insured's cooperation, and (3) the attitude of the insured, after cooperation was sought, was one of willful and avowed obstruction" *Lancaster v. Incorporated Village of Freeport*, 92 A.D.3d 885, 886, 939 N.Y.S.2d 122, 124 (2d Dept. 2012). NY law strictly enforces "compliance by an insured with an insurer's request for proofs of loss." *Harris v. Allstate Ins. Co.*, 83 F.Supp.2d 423, 429 (S.D.N.Y. 2000) (citing N.Y. Insurance Law § 3407(a) and *Igbara Realty Corp. v. New York Prop. Ins. Underwriting Ass'n*, 63 N.Y.2d 201, 209, 470 N.E.2d 858, 481 N.Y.S.2d 60, 61- 62 (1984)). "The duty of an insurer to pay under a policy of insurance arises only after proofs of loss have been received by such insurer." *Do-Re Knit, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 491 F.Supp. 1334, 1338 (E.D.N.Y. 1980).

### I.     Extra Contractual Claims

The CMO directed that plaintiffs were to withdraw extra contractual claims by today, or submit letters explaining the basis for such claims. As of today, I have not received any letters explaining the basis for extra contractual claims and I would request the opportunity to provide a supplemental list on this topic should I receive these explanations.

### J.     Lender Placed Policies

Some insurers' policies provide for lender-placed insurance that is issued to the lender by the insurer for the insured's property. Where the lender is not a party to the litigation, the homeowner lacks of standing to sue the insurer and, in addition, there is an issue regarding the failure to include an indispensable party.

Lender placed policies insure the lender for their interest in the property. The contract is not with the borrower. A plaintiff may not maintain a cause of action for breach of contract against a defendant where it has no contractual relationship with the defendant. *See M. Paladino,*

*Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 515, 669 N.Y.S.2d 318 (2d Dept. 1998).

Insurance coverage extends only to named entities and/or individuals defined as insured parties under the relevant terms of the policy. *Catholic Health Serv. of Long Is., Inc. v. National Union Fire Ins. Co of Pittsburgh, P.A.,* 46 A.D.3d 590, 592, 847 N.Y.S.2d 638 (2d Dept. 2007) (*citing Sanabria v. American Home Assur. Co.,* 68 N.Y.2d 866, 868, 501 N.E.2d 24, 508 N.Y.S.2d 416 (1986)); *Seavey v. James Kendrick Trucking,* 4 A.D.3d 119, 770 N.Y.S.2d 865 (1st Dept. 2004); *Mitchell v. County of Jefferson,* 217 A.D.2d 917, 629 N.Y.S.2d 605 (4th Dept. 1995); *National Gen. Ins. Co. v. Hartford Acc. & Indem. Co.,* 196 A.D.2d 414, 601 N.Y.S.2d 4 (1st Dept. 1993).

Where the insurance contract does not name, describe, or otherwise refer to the entity or individual seeking the benefit thereof as an insured, there is no obligation to defend or indemnify. *State of New York v. American Mfrs. Mut. Ins. Co.,* 188 A.D.2d 152, 155, 593 N.Y.S.2d 885 (3d Dept. 1993).

A standard mortgagee clause in an insurance policy gives rise to a separate insurance of the mortgagee's interest, independent of the mortgagor's right of recovery. *Reed v Federal Ins. Co.*, 71 N.Y.2d 581, 589, 523 N.E.2d 480, 528 N.Y.S.2d 355 (1988). This clause requires an insurer to first make payment to the mortgagee to the extent of its interest, and then pay the balance of the loss, if any, to the mortgagor. *Grady v Utica Mut. Ins. Co*., 69 A.D.2d 668, 419 N.Y.S.2d 565 (2d Dept. 1979).

The insurance is for the mortgagee's benefit to the extent of the debt, and the mortgagee may recover from an insurer up to his secured interest. *Fields v. Western Millers Mut. Fire Ins. Co*., 48 N.E.2d 489, 490-91, 290 N.Y. 209, 212-13 (1943).

# COMMONLY OCCURRING ISSUES IN CLAIMS AGAINST INSURANCE AGENTS

Plaintiffs cannot recover based on any alleged negligence or misrepresentation on the part of Defendant in not informing Plaintiffs of the alleged availability of preferred risk policies. The United States Court of Appeals for the Fifth Circuit recognized that federal common law bars any recovery by Plaintiffs against an insurance agency based on state law theories of negligence or detrimental reliance (i.e., misrepresentation). *Wright v. Allstate Ins. Co.,* 415 F.3d 384, 390 (5th Cir. 2005) (citing *C.E.R 1988, Inc. v. The Aetna Cas. & Sur. Co.,* 386 F.3d 263, 270-71 (3d Cir. 2004) and *Gibson v. Am. Bankers,* 289 F.3d 943, 948-50 (6th Cir.2002)); *see also Lawrence v. Fid. Nat'l Ins. Co.*, 2007 U.S. Dist. LEXIS 42556, 2007 WL 1741785 at *5 (E.D. La. June 8, 2007). Any application of state tort law to claims raised under the National Flood Insurance Act ("NFIA") would impede Congress's objective of reducing fiscal pressure on federal flood relief efforts. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (citing *C.E.R.,* 386 F.3d at 270).

In *Metzger,* the plaintiff/insured admitted receiving his insurance policy and not reading it, claiming that it was only at the time of the loss that he learned the policy did not provide coverage that he subjectively believed was included. The court held:

> A mere reading of the policy would have made him know the agreement the plaintiff was accepting and entering into. To hold that a contracting party, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him would introduce into the law a dangerous doctrine. Of course, the doctrine does not exist. It has often been held that when a party to a written contract accepts it as the contract, he is bound by the stipulations and conditions expressed in that whether or not he reads them. 227 N.Y. at 415-16.

This doctrine has been uniformly applied by the courts to preclude a plaintiff from using its 20/20 hindsight to complain for the first time after a loss that coverage procured through its insurance broker was insufficient. *L.C.E.L,, supra; Worcester Ins. Co. v. Aaron Grover Agency,*

220 A.D.2d 659, 633 N.Y.S.2d 66 (2d Dept. 1995); *Rotanelli v. Madden,* 172 A.D.2d 815, 569 N.Y.S.2d 187 (2d Dept. 1991); *American Motorist Ins. Co. v. Salvatore,* 102 A.D.2d 342, 476 N.Y.S.2d 897 (1st Dept. 1984); *M & E. Manufacturing Co., Inc. v. Frank H. Reis,* 258 A.D.2d 9, 692 N.Y.S.2d 191 (3d Dept. 1999); *Leiberthal v. Agency Brokers,* 216 A.D.2d 816, 628 N.Y.S.2d 885 (3d Dept. 1995); *Nicholas J. Masterpol, Inc. v. Travelers Ins. Cos.,* 273 A.D.2d 817, 711 N.Y.S.2d 88 (4th Dept. 2000).

It is well-established that an insurance company and its agents have "no continuing duty to advise, guide, or direct a client to obtain additional coverage." *Murphy v. Kuhn*, 90 N.Y.2d 266, 270, 682 N.E.2d 972, 660 N.Y.S.2d 371 (1997). See also *Chaim v. Benedict,* 216 A.D.2d 347, 347, 628 N.Y.S.2d 356 (2d Dept. 1995) ("there is no common-law duty of an insurance company or its agency to advise a client to procure additional coverage.") The existence of a duty owed by defendant to plaintiff is an "essential element" of a negligence claim, the absence of which mandates dismissal. *See Martian Entm't, LLC. v. Harris,* 12 Misc.3d 1190(A), 824 N.Y.S.2d 769 (Sup. Ct. N.Y. Co. July 5, 2006) (citing 5*32 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 750 N.E.2d 1097, 727 N.Y.S.2d 49 (2001)); *see also Eurycleia Partners, LP v. Seward & Kissel, LLP,* 46 A.D.3d 400, 402, 849 N.Y.S.2d 510, 512 (1st Dept. 2007).

Furthermore, New York Courts have held that an applicant's signature on an insurance application bars any claim of negligence or fraud. *See Curanovic v. N.Y. Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 762 N.Y.S.2d 148 (3d Dept. 2003)*, aff'd on appeal*, 22 A.D.3d 975, 803 N.Y.S.2d 234 (3d Dept. 2005) (insurance agent could not be held negligent where applicant signed the application even though applicant could not read or write English).

Dated: New York, New York
       March 7, 2014

*Jared Greisman*

Jared T. Greisman
Defendants' Liaison Counsel
WHITE FLEISCHNER & FINO, LLP
61 Broadway
New York, New York 10006
(212) 487-9700
jgreisman@wff-law.com